UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JANICE L. PERSON, | ) | No. CV 10-02796-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.    Whether the Administrative Law Judge ("ALJ") properly

1              evaluated Plaintiff's excess pain testimony; and

2        2.     Whether the ALJ properly evaluated Plaintiff's past relevant

3              work.

4 (JS at 3.)

5

6      This Memorandum Opinion will constitute the Court's findings of

7 fact and conclusions of law. After reviewing the matter, the Court

8 concludes that the decision of the Commissioner must be affirmed.

9

10                               I

11         **THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

12               **AS TO EXCESS PAIN TESTIMONY**

13      At the hearing before the ALJ, held on September 9, 2008 (AR 20-

14 46), Plaintiff appeared and testified. As summarized by the ALJ, she

15 testified that she experiences severe lower back pain and must sit

16 with her legs raised. She has significant problems sitting, standing

17 and walking, and in fact, can only stand for ten minutes and can

18 barely walk. She believes she could carry about 15 pounds. (AR 18.)

19 Considering this evidence, and the other evidence in the record, the

20 ALJ found that Plaintiff's medically determinable impairments could

21 reasonably be expected to cause the alleged symptoms; however, her

22 symptoms as to intensity, persistence and limiting effects were found

23 to be not credible to the extent they are inconsistent with the

24 Residual Functional Capacity ("RFC") assessed by the ALJ. (AR 18.)

25 The RFC assesses that Plaintiff can perform light work with certain

26 exceptions which limit her to occasionally climbing stairs, ladders or

27 scaffolding, and occasionally bending, balancing, stooping, kneeling,

28 crouching, or crawling. (AR 15.)

1    In assessing Plaintiff's credibility, the ALJ set forth the
2  credibility assessment factors described in Social Security Ruling
3  ("SSR") 96-7p. (AR 16.)

4    Plaintiff asserts that "while the ALJ's rationale has some
5  credence prior to early 2007, it does not have credence thereafter."
6  (JS at 10.)

7    It is well established that the ALJ must articulate clear and
8  convincing reasons for rejecting pain and limitation testimony.  See
9  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v.
10 Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

11   The ALJ relied upon four factors as articulated in the decision
12 to discount Plaintiff's credibility.  The Court will examine these to
13 determine if they constitute clear and convincing reasons.

14   The ALJ first found that the medical evidence of record did not
15 support the degree of pain and dysfunction alleged by Plaintiff. (AR
16 16-18.)

17   Inconsistencies between the objective medical evidence and the
18 subjective complaints made by a claimant are only one factor that an
19 ALJ may consider in the credibility analysis, although they cannot
20 form the sole basis to discount pain testimony. (See SSR 96-7p.)

21   Plaintiff received consultative examinations ("CE") from three
22 examining physicians, as noted in the ALJ's decision. (See AR at 16-
23 17.)

24   Plaintiff received an orthopedic CE from Dr. Sophon on December
25 21, 2005 at the request of the Department of Social Services. (AR 346-
26 350.) Dr. Sophon's findings were unremarkable, and thus, Dr. Sophon
27 found that Plaintiff "does not have significant physical impairment
28 and there are no functional limitations." (AR 350.)

Plaintiff received an internal medicine CE from Dr. Pourabbani on November 13, 2006 at the request of the Department of Social Services. (AR 407-411.)  Based upon his examination, Dr. Pourabbani found that Plaintiff can lift or carry 50 pounds occasionally and 25 pounds frequently, that her push and pull abilities are unlimited in both upper and lower extremities, that she is limited in kneeling, crawling and bending to occasional, she can stand and walk for six hours and sit for eight hours in an eight-hour day. (AR 411.)   Thus, Dr. Pourabbani also found that Plaintiff can perform medium exertional level work.

Finally, Plaintiff received another orthopedic CE at the request of the Department of Social Services on July 6, 2007 from Dr. Conaty. After conducting a physical examination, Dr. Conaty came up with similar findings as the previous two physicians, noting "minimal objective clinical or radiographic findings to support [Plaintiff's] subjective complaints." Although finding some functional limitations, Dr. Conaty also found that Plaintiff could perform medium exertional level work. He also found no indication for the need for the use of a cane. (AR 438.)

Despite these consistent examination results, Plaintiff asserts that her condition substantially deteriorated after mid-2007, noting a report from Dr. Ovalle.[1]

The ALJ specifically addressed Dr. Ovalle's opinion, and determined to accord it less than great weight.  He noted that Dr. Ovalle completed a musculoskeletal questionnaire based on his having

_____

[1]   Plaintiff asserts that Dr. Ovalle examined her in August 2007; however, although his report was prepared at that time, it indicates that his examination occurred in April 2007. (AR 504.)

seen Plaintiff on two occasions, that his opinion is not supported by the objective evidence and relies primarily on Plaintiff's self-reported history of falling.  The ALJ noted that the neurological abnormalities identified by Dr. Ovalle would not result in an inability to perform at the RFC identified, and remarked that Dr. Ovalle himself opined in his August 2007 letter that Plaintiff would only need four to six weeks off work.  Finally, the ALJ noted that Dr. Ovalle is not an orthopedic specialist and when asked about Plaintiff's anticipated duration of symptoms, deferred to the opinion of an orthopedic specialist. (AR 16, citing AR 435-439, 504.)

The Court cannot conclude that the ALJ erroneously evaluated the numerous medical opinions in the record in concluding that there was a substantial disconnect between Plaintiff's complaints and the results of these examinations.  While Plaintiff seems to largely rely on Dr. Ovalle's evaluation to support her claim that her physical condition substantially deteriorated after mid-2007, the fact is that Plaintiff was examined by Dr. Conaty after mid-2007, at which time her examination was almost entirely unremarkable.  There is little if anything in the record that would support such a sudden and drastic deterioration in Plaintiff's condition as she posits.

As a second reason, the ALJ noted that Plaintiff returned to work as a domestic caretaker in November 2006. (AR 16, 175, 389.)  She provided care for two bipolar adults.  She self-reported that she had been fairly active since she returned to work for others, that her life was much more normal since she began doing this and that she was functioning better since she had work responsibilities. (AR 181, 184, 203.)  While Plaintiff, in her Reply, argues that this work episode should not be relevant to the credibility assessment, neither the

statute nor the regulations cited by Plaintiff provide as much.  The fact is that Plaintiff undertook work which entailed a physical exertion level commensurate with the RFC assessed by the ALJ, late in 2006, at the time she was claiming to be disabled due to pain.  The Court agrees that this work history was relevant in the credibility analysis.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

As a third reason, the ALJ noted that Plaintiff had received pain medications not commensurate with her claimed degree of pain. (AR 18.) While this is a recognized credibility assessment factor (see 20 C.F.R. §§404.1529(c)(3)(v), 416.929(c)(3)(v)), Plaintiff notes that she has had serious side effects from more powerful medications.  The Court certainly cannot find the fact that Plaintiff might have side effects from one more powerful medication to be irrelevant; however, it does not appear from the record that Plaintiff was unable, for financial or other reasons, to secure treatment or to seek to obtain more effective forms of medication than over-the-counter aspirin, if indeed the pain was as extreme and disabling as she claimed.  The Court thus cannot find that the third factor as assessed by the ALJ was improperly evaluated.

Finally, the ALJ noted Plaintiff's level of daily activities to demonstrate that she was more functional than she claimed. (See AR 15, 18.)  While Plaintiff asserted that her pain prevents her from driving in excess of a five-mile radius, she in fact did drive herself to the hearing before the ALJ, which took 30 minutes, and she specifically indicated that her only problem was a little bit of traffic. (AR 29.) Similarly, Plaintiff notes that she has a number of pet cats, but because of her pain, she cannot bend over to feed them or change their

litter box.  This conflicts with the report of Plaintiff's mother-in-law, Ms. Pinkney, who indicates that Plaintiff feeds her pets. (AR 232.)  The Court certainly agrees with Plaintiff's citation to Ninth Circuit cases which hold that in order to be disabled, Plaintiff's daily activities must not be such as to leave her in a vegetative state. (See cases cited at JS 11.)  Nevertheless, for purposes of credibility assessment, the extreme limitations cited by Plaintiff in her ability to perform exertional activities conflicts on a substantial level with the actual daily activities that she performs. In addition to the foregoing activities, she performs light housework, shops for groceries, prepares meals, and is able to water her plants. While these activities need not be transferrable to the work environment in order to defeat a claim for disability, nevertheless, it is the contradiction between Plaintiff's claims of pain and its debilitating effects, and what she actually does on a daily basis that constitutes a relevant credibility factor.  The Court cannot find error in the ALJ's assessment in this regard.


## II

**THE ALJ PROPERLY CHARACTERIZED PLAINTIFF'S PAST RELEVANT WORK**

Plaintiff's work history and earnings report indicate that she worked as a retail manager until 1994, including 1993. (AR 127-129, 149, 158, 268.)  Thereafter, she worked in domestic services while self-employed, between 1994 and May 2005, working six days per week, eight hours per day. (AR 18, 127-130, 149, 159.)

At the administrative hearing, a vocational expert ("VE") testified that Plaintiff was self-employed as a "personal attendant" (see Dictionary of Occupational Titles ["DOT"] No. 309.674-014).  This

constituted "light" work. (AR 42-43.)

Plaintiff argues that there is no clear evidence in the record that she worked through 1993 as a retail store manager. The significance of the date last worked is that in order for past work to be considered at Step Four of the sequential evaluation process, it must have occurred within 15 years of the final determination of disability. See 20 C.F.R. §§404.1565(a), 416.965(a); SSR 82-61. The ALJ submitted his decision on December 3, 2008. (AR 19.) Therefore, in order for Plaintiff's work as a retail manager to be considered as substantial gainful employment ("SGA") and as past relevant work, she must have worked past December 3, 1993. Plaintiff argues that the Commissioner failed to develop the record to make this determination, and simply assumed that she did work after December 3, 1993 as a retail sales manager. The Commissioner, however, notes that Plaintiff's earnings report in 1993 indicates almost the identical amount of income earned as in 1992. (See AR 127-129.) Therefore, the Commissioner asserts that it was reasonable for the ALJ to conclude that Plaintiff worked through 1993. The Court agrees that the ALJ made a reasonable inference from the record based on the earnings report. In addition, the Court notes that Plaintiff herself listed her years worked as an assistant manager as "1991-1993," while she listed her work in domestic services as "1994-5/2005." (AR 149.) It would be reasonable to infer that Plaintiff was capable of indicating in her report that she did not work through 1993, since she did the same type of delineation concerning her subsequent job. The Court does not view this inference as a failure to develop the record on the part of the ALJ. The types of decisions made in Social Security cases by ALJs are often made where the evidence is susceptible to more than

one rational interpretation.  It is the ALJ's job, indeed, to make reasonable inferences from the evidence.

Similarly, Plaintiff's subsequent self-employment in domestic services, characterized as "personal attendant" by the VE, constituted SGA.  Plaintiff does not dispute the Commissioner's analysis (see JS at 25-27) that this work is properly analyzed as SGA pursuant to the regulations and applicable case law. (See JS at 26, citing 20 C.F.R. §§404.1575(a)(2), 416.975(a)(2); Byington v. Chater, 76 F.3d 246, 249 (9th Cir. 1996).)  Plaintiff's fallback argument, set forth in her Reply, is that there is no basis in the record to determine whether her self-employment activity is comparable to that of unimpaired individuals who are in similar businesses.  Plaintiff argues that there was no "market analysis." (JS at 29.)  The Court deems that this argument is without merit, and that the Commissioner properly interpreted the regulations and case law to determine that Plaintiff's work as a personal attendant was relevant in the Step Four sequential analysis.

The final issue concerning Plaintiff's past relevant work concerns her argument that the ALJ did not correctly analyze her role as a child monitor, which constitutes medium work, one of various services she performed as part of her business. (AR 43.)  Plaintiff relies on the case of Valencia v. Heckler, 751 F.2d 1082, 1086-87 (9th Cir. 1985), which holds, generally, that the ALJ may not segregate out particular duties and tasks of a job to classify past relevant work based on the least demanding function of a job.  But that is not what occurred in this case.  Rather, the ALJ selected the most representative occupation among various occupations as to all of the tasks performed. (AR 18, 43.)  The Court finds no error in this

analysis.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.


DATED: February 10, 2011                    /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE